MITCHELL v. SOUTHERN UNION LIFE INS. CO. (No. 6134.)

(Court of Civil Appeals of Texas. Austin. Jan. 14, 1920. Rehearing Denied Feb. 18, 1920.)

1. INSURANCE ☞367(3) — PERIOD OF AUTOMATIC CONTINUING INSURANCE BEGAN AT END OF GRACE PERIOD.

Under life policy, giving 30 days' grace in payment of premium and providing that if premium has not been paid within period of grace and policy has not been surrendered the insurance will automatically continue for such term as is stated below (for one month in the instant case), *held* that period of automatic continued insurance began at the end of the grace period, so that where insured, who had paid first premium only, died after the expiration of the grace period for payment of second premium, but within one month after expiration of grace period, the policy was in force at the time of his death.

2. INSURANCE ☞146(3)—AMBIGUOUS PROVISION CONSTRUED IN FAVOR OF ASSURED.

Where life policy which is ambiguous admits of a construction favorable to the insured, such construction will be enforced.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Suit by Mrs. Flora Mitchell against the Southern Union Life Insurance Company. Judgment that plaintiff take nothing by her suit, and she appeals. Reversed and rendered.

Shurtleff & Cummings, of Waco, and Black & Smedley, of Austin, for appellant.

J. D. Williamson, of Waco, for appellee.

BRADY, J. Appellant sued appellee to recover the principal sum of $1,500, upon a policy of insurance on the life of Charlie A. Mitchell, deceased, the husband of appellant, and for statutory damages and attorney's fees. There was a trial without a jury, and judgment was rendered that appellant take nothing by her suit. The trial judge filed no findings of fact or conclusions of law.

The material facts are that the policy in suit was issued and dated March 3, 1917, reciting the payment of the premium for the first policy year ending March 2, 1918, and the policy is described as a 20-payment life policy. The premiums were required to be paid in advance, on or before the 2d day of March in every year, and the policy contains this clause:

"If any premium is not paid on the date when due, the policy shall be null and void, except as hereinafter provided."

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The policy also contains the following clauses:

"*Period of Grace.*—In the payment of premiums under this policy, except the first, a grace of one month will be allowed without interest charge, but if death occurs during said month of grace the unpaid premium will be considered an indebtedness hereon to the company.

· "*Surrender Options.*—The insured may at any time after the·third policy year surrender this policy within the period of grace for its full cash value or for a paid-up life policy.

"*Cash Value.*—The cash value at the end of any policy year will be for the amount as stated in the table below, plus a proportionate increase for any fraction of a year for which a premium has been paid and less all indebtedness hereon to the company.

"*Paid-up Life Policy.*—The paid-up life policy at the end of any policy year will be for the amount as stated in the table below, plus a proportional increase for any fraction of a year for which a premium has been paid. If there is any indebtedness hereon to the company the amount of paid-up life policy will be proportionately reduced.

"*Automatic Continued Insurance.*—If the premium has not been paid within the period of grace and the policy has not been surrendered as provided above, the insurance will automatically continue as term insurance for the face amount hereof for such term as, at the end of any policy year, is stated in the table below."

The table referred to is in the following form, being copied only as far as the fourth year:

Table of Cash-Loan and Nonforfeiture Values.

| End of Policy Year. | Cash Value. | Paid-Up Insurance. | Term of Continued Insurance. | | Loan Value. |
|---|---|---|---|---|---|
| | | | Years | Mos. | |
| 1st | * | * | | 1 | * |
| 2nd | * | * | | 2 | $54.00 |
| 3rd | $54.00 | $157.00 | 4 | 7 | 82.50 |
| 4th | 82.50 | 237.00 | 7 | 8 | 112.50 |

This table is immediately followed by the following statement:

"All values in·this table are·in excess of any legal requirements."

Mr. Mitchell died April 22, 1918, which was after the end of the first policy year, and after the expiration of the grace period for the payment of the second premium, but within one month after the expiration of the grace period.

The insurance company in two letters notified Mr. Mitchell, during February and March, 1918, of the due date and· amount of the premium, and of the expiration of the grace period on April 2d, as a reminder ·to him to pay his premium for the second policy year. Such premium was never paid.

On April 6, 1918, appellee, through its secretary, wrote Mr. Mitchell the following letter:

"Waco, Texas, April 6, 1918.

"Mr. C. A. Mitchell, Penelope, Texas—Dear Sir: Your policy No. 7280 lapsed on April 2, 1918. Your estate is therefore worth $1,500.00 less than it would be if you had paid the premium when it was due. ·

"This company wants to extend its usefulness as far as possible and give every assistance it can to policy holders in order to help them keep the protection its life insurance policies afford.

"If you can make a small cash payment the company will take your note for the balance, payable at a later date.

"We are inclosing a self-addressed envelope for your reply.

"Read the policy over. Note on first page it is free from all conditions as to military or naval service.

"Sincerely,     Jas. L. Mistrot, Secretary."

This letter is claimed by appellant to have constituted a waiver of any forfeiture, although it was not acted upon by Mr. Mitchell or by appellant. The letter was received April 8th, and read by appellant to her husband, who was then sick with influenza. On the same day, Mr. Mitchell was able to go to his father's house, several doors from his own residence, but two days later was taken sick with pneumonia, and was seriously ill until his death, April 22d.

In connection with the claim of waiver, the evidence shows the following clause in the policy:

"*Reinstatement.*—If any premium is not paid on the date when due, or within the period of grace, and this policy has not been surrendered, the company will reinstate the policy as of said due date at any time thereafter, upon evidence of insurability satisfactory to the company and payment of all arrears of premiums with interest at the rate of five per cent. per annum, together with the payment, or reinstatement of any indebtedness on this policy on said due date, with interest."

### Opinion.

[1] We have·concluded that this case must be reversed upon the first point raised in appellant's brief. It is succinctly stated in ·the first proposition as follows: '

Since the policy allows a grace of one month in the payment of the premium which was due March 2, 1918, and provides that if the premium has not been paid within the period of grace, the insurance will automatically continue as term insurance for the face of the policy for such term as, at the end of any policy year, is stated in the table, and the term stated in the table at the end of the first policy year is one month, the period of automatic continued insurance began at the end of the grace period, and the policy was in force on April 22, 1918, when the insured died.

This issue is made by the pleadings and the undisputed evidence, and the question is whether the 30-day period of automatic con-

tinued insurance began on the day when the second premium was due, that is, on March 2d, or whether it began at the end of the 30-day period of grace, which was April 2d. If it began at the end of the grace period, then the continued insurance for the full amount of the policy was in force on April 22, 1918, when the insured died, but if the period began to run at the end of the first policy year, or on the date the second premium became due, then the insurance was not in force at the death of the insured. The question resolves itself into one of the proper construction of the language of the policy.

In a strong and forceful argument, able counsel for appellant have, in the main, so clearly presented our views upon this question that we copy from their brief as follows:

"Appellee is insisting upon a forfeiture on account of the provision of the policy to the effect that, if any premium is not paid when due, the policy shall be null and void, except as otherwise provided therein. The clause allowing grace of 30 days has been set out in the foregoing statement. It is allowed in the payment of all premiums after the first, with the proviso that, if death occurs during the month of grace, the unpaid premium will be considered an indebtedness on the policy to the company. By the next clause of the policy, the insured is given the privilege, at any time after the third policy year, to surrender the policy within the period of grace for its full cash value or for a paid-up life policy. This clause is followed in the policy by a statement showing the cash value and a statement with reference to the paid-up life policy. Then comes the clause providing for automatic continued insurance. The language of this clause is peculiar. In fact we have not been able to find any other policy containing the same language. It provides that, if the premium has not been paid within the period of grace and the policy has not been surrendered, the insurance will automatically continue as term insurance for the face amount of the policy for such term as, at the end of any policy year, is stated in the table below. The table is used simply as a method of abbreviation, in order that it may be unnecessary to state in the body of the policy the length of the period of continued insurance of the various years. The language is that the term of continued insurance shall be 'for such term as, at the end of any policy year, is stated in the table below.' Knowing the year in question, we then turn to the table to determine the length of the term of continued insurance. The table gives no information as to the time when the continued insurance begins to run. The body of the policy must be consulted to determine that fact.

"It is to be observed that the policy does not state that the insurance will automatically continue for such time from the end of any policy year, as is stated in the table below. If it did, there would be some strength in appellee's position. The form of the sentence and the punctuation indicate that what is meant is that the insurance shall continue for such term as is stated at the end of any policy year in the table below, showing that the table is intended mere-

ly for reference, to give the different terms of continued insurance applicable to the various years.

"The first part of the sentence must be looked to for the purpose of ascertaining when the period begins. It provides that, if the premium has not been paid within the period of grace and the policy has not been surrendered, as above provided, the insurance will automatically continue, etc. The period within which the policy may be surrendered is expressly made the same as the grace period, that is, one month from the date when the premium is due. The use of the words 'has not been paid' and 'has not been surrendered' is significant. The reasonable and natural construction of this language is that the period of continued insurance shall begin at the expiration of the grace period, if the insured has not paid his premium and has not surrendered his policy. The company, in its policy, says to the insured that he shall have, at the end of the first year, a period of one month within which to pay his premium after it becomes due, and then that, if he has not paid the premium within that period, he shall have automatic continued insurance for one month. There is nothing in the language used to indicate that these two periods shall be concurrent, and, since there is not, and since the words 'has not been paid' are used, it necessarily follows that it was not intended that the periods should be concurrent, but that the one should follow the other.

"It does no violence to the language of the policy, disregarding the reference to the table which causes the ambiguity, if there is any, to construe the automatic continued insurance clause applicable at the end of the first year as if it were written thus: 'If, at the end of the first policy year, the premium has not been paid within the period of grace, the insurance will automatically continue as term insurance for the face amount hereof for one month.' It will hardly be contended that this language does not mean that the period of continued insurance begins at the end of the period of grace.

"Further support of the correctness of our construction is found in the application to the clause in question and to the clause with reference to grace of the well-settled rule that no clause of a policy will be so construed as to render nugatory another clause of the policy. Joyce has thus stated the rule:

" 'No clause should be declared nugatory, for a construction should be given that will carry into effect, if possible, all the provisions of the policy and each clause.' Joyce on Insurance (2d Ed.) § 13.

"The clause with reference to grace provides that, in the payment of premiums, a grace of one month will be allowed, but if death occurs during said month of grace, the unpaid premium will be considered an indebtedness on the policy to the company. Article 4741, subdivision 2, of the Revised Civil Statutes requires that all policies of life insurance contain a clause allowing grace, but it does not require that to this clause shall be added a proviso that the unpaid premium shall be deducted from the amount of the policy in the event of the death of the insured within the grace period. It merely permits that such proviso be inserted in the policy. Appellee company, therefore, deliberately and intentionally placed the proviso above re-

ferred to in its policy. Now, if appellee's construction of the automatic continued insurance clause is correct, then the period of such insurance is concurrent with the period of grace. This construction would render nugatory that portion of the clause with reference to grace providing that, if the insured dies within the period of grace, the unpaid premium will be considered an indebtedness to the company, for the beneficiary would always claim the benefit of the automatic continued clause under which no deduction could be permitted or claimed on account of the unpaid premium; that is, the position would always be taken, when the insured died within a month from the due date of any premium, that he was protected by the automatic continued insurance clause during that month, and that the company, therefore, could not collect the unpaid premium as stipulated in the grace clause. If appellee's construction is correct, therefore, there would never be a time when the provision for deduction in the event of death during the grace period could be invoked or enforced.

"From the other viewpoint, our construction is more reasonable than that claimed by appellee. The policy shows a purpose on the part of the company after the expiration of the first year to allow both a period of grace and a period of continued insurance. It expressly provides that, in the payment of all premiums, except the first, a grace of one month will be allowed. The automatic continued insurance and the table show that there shall be, after the expiration of the first policy year, a period of extended insurance for one month. Which is it, grace or continued? The grace clause as written in the policy is in force, and if the two periods are concurrent, then, at the end of the first year, there is no continued insurance at all, notwithstanding the fact that the policy shows a purpose that there shall be such insurance. The company was not required by law to allow continued insurance at the end of the first year (see subdivision 7 of article 4741, requiring that policies of life insurance shall contain a provision for extending insurance after the premiums have been paid for three years). And yet the company, by its policy, provides for continued insurance of one month after the expiration of the first policy year, and boasts that the values in the table are in excess of any legal requirements. Having inserted in its policy clauses allowing both a period of grace and a period of extended insurance, appellee should not be heard to contend for a construction of its policy rendering one or the other of these provisions nugatory.

"The foregoing argument has been presented for the purpose of showing that the fair and reasonable construction of the language used in the contract is that the period of continued insurance began at the end of the period of grace, and that the consideration of the terms and provisions of the policy in their plain, ordinary, and popular sense leads to that conclusion. This contention is believed to be sound, and is presented as being of itself decisive of the case. If, however, for any reason, the court should not agree with us that such is the plain meaning of the language of the policy, then we submit that the language is at least ambiguous, and is susceptible of our construction. This being true, because the language in the policy is the language of the appellee company, and because appellee is seeking to enforce a forfeiture of the policy, and under the well-settled rules of construction, the language should be construed against the appellee and liberally in favor of the insured, and should be so construed as to prevent forfeiture. Judge Brown, in the case of Brown v. Palatine Insurance Company, 89 Tex. 590, 595 [35 S. W. 1060] thus states the rule:

"'The language, being selected and used by the insurer to express the terms and conditions upon which it issued the policy, will be strictly construed against it, and liberally in favor of the insured. If the words admit of two constructions, that one will be adopted most favorable to the insured. * * *

"'Forfeitures are not favored by law, and, if the language used is fairly susceptible of an interpretation which will prevent a forfeiture, it will be so construed.'

"We have not been able to find a case construing language identical with that used in the policy involved in this case. However, there are a few cases in which the facts are very similar to the facts in our case and many cases in which the language of insurance policies is given constructions much more liberal in favor of the insured than that which we ask here. A few of them will be briefly referred to.

"In the case of McMaster v. New York Life Insurance Co., 183 U. S. 25 [22 Sup. Ct. 10] 46 L. Ed. 64, the policy was issued December 18, 1903. It recited the payment in advance of an annual premium of $21, and provided for 'the payment of a like sum upon the twelfth day of December in every year thereafter during the continuance of the policy.' A grace of one month was allowed in the payment of the premiums. The insured died January 18, 1895. The defense was that the policy was forfeited by the failure to pay the second annual premium on or before January 12, 1895. The court held, however, that the insurance was still in force when the insured died. The opinion is an interesting one, showing that the court declined to give the language above quoted a literal interpretation, but sought a construction which would sustain, rather than forfeit, the contract. The court construed the words 'in every year thereafter,' above quoted, to mean 'in every year after the year the premiums for which have been paid,' or 'in every year after the current year from the date of the policy.' We believe that the construction which the Supreme Court gave the policy in the McMaster Case, in order to sustain rather than forfeit the contract, is much more liberal in favor of the insured than is the construction which we place upon the policy in this case.

"The opinion in the McMaster Case also emphasizes the fact that the period of grace belongs to the insured of right. See, also, the case of Provident Life Insurance Association v. Taylor, 142 Fed. 709 [74 C. C. A. 41], holding that the period of grace is not a mere personal privilege exercised by the assured, but is an integral part of the policy and a contractual right, and that, when the insured died in the period, recovery should be allowed, even though he had stated before his death that he did not intend to continue his insurance. So in our case the period of grace and the period of

continued insurance are integral parts of the policy, and both belong to the insured of right.

"The case of Prudential Insurance Co. v. Devoe, 98 Md. 584, 56 Atl. 809, is very like our case. There, the policy was issued and the first premium paid on May 27, 1901. Other premiums were due on or before the 27th day of March in every year. The policy contained this provision:

" 'In the payment of any premium under this policy, except the first, a grace of one month will be allowed during which time the policy will remain in force.'

"It also contained the following clause:

" 'If the policy, after being in force one full year, shall lapse for nonpayment of premium, the company will continue in force the insurance under this policy for a period of sixty days from the date of the lapse.'

"The insured died June 20, 1902, without having paid another premium. The court held that the policy lapsed on April 27, 1902, that is, at the end of the grace period, and that by the terms of the policy the insurance was continued in force until June 27, 1902. In that case, the court treated the period of grace and the period of insurance not as concurrent, but as two separate periods, the one following the other. * * *

"It is submitted that, if the language of the continued insurance clause is not reasonably and naturally construed as we have construed it, the language is at least fairly susceptible of our interpretation, and that, under the authorities and the rules which have been above discussed, the construction most favorable to the insured should be used so that forfeiture may be avoided.

"It would have been very easy for the insurance company to have written its policy so as to expressly provide that the continued insurance should run from the due date of the premium, or that within the period of continued insurance should be included the grace period, but it deliberately selected language indicating that the period of continued insurance should follow the period of grace, or language at least susceptible of that construction, and it is now insisting upon the forfeiture on account of the delay in the payment of the premium, which it may reasonably be inferred would not have occurred if the policy had clearly shown that all protection afforded by it should terminate at the end of the period of grace."

The following authorities are cited, in support of the proposition, in appellant's brief: Prudential Ins. Co. v. Devoe, 98 Md. 584, 56 Atl. 809; American Natl. Ins. Co. v. Thompson, 186 S. W. 254; McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64; Mutual Life Ins. Co. v. New, 125 La. 41, 51 South. 61, 27 L. R. A. (N. S.) 431, 136 Am. St. Rep. 326; Mutual Reserve Fund Association v. Payne, 32 S. W. 1063; Supreme Lodge, etc., Association v. Mondrowski, 20 Tex. Civ. App. 322, 49 S. W. 919; London, etc., Insurance Co. v. Davis, 37 Tex. Civ. App. 348, 84 S. W. 260; Royal Ins. Co. v. Texas, etc., Ry. Co., 53 Tex. Civ. App. 154, 115 S. W. 117, 123; Brown v. Palatine Ins. Co., 89 Tex. 590, 595, 35 S. W. 1060; Goddard v. Ins. Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1; Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S. W. 406; Blackstone v. Ins. Co., 107 Tex. 102, 174 S. W. 821; Goodwin v. Provident, etc., Association, 97 Iowa, 226, 66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411; Joyce on Insurance (2d Ed.) §§ 212, 213, 220, 221, 222.

[2] This reasoning is almost conclusive that the language of the contract is to be reasonably and naturally construed as contended for by appellant, but we have no doubt that the policy is at least ambiguous, and that it admits of such construction, and, it being that most favorable to the insured, will be enforced

It is, perhaps, unnecessary to add anything to the argument of counsel for appellant, but we think it is not amiss to suggest this further thought: If the construction of the contract, contended for by appellee, should be given, the phrase "automatic continued insurance" would be a positive misnomer. Whether the grace period be regarded as merely providing an extension for the time of payment of premiums, or as a period within which a forfeiture will not be permitted, its necessary practical effect is to confer upon the insured 30 days additional insurance or protection. In other words, by the very terms of the policy, the insured, by paying the first premium in advance, secured, not merely one year's insurance, but one year and one month. Therefore, to limit the benefit of automatically continued insurance to the same period as that granted by the grace clause, that is to run concurrently with it, would be practically to give no extended or continued insurance. This result would be in the face of the plain and ordinary meaning of the language employed, and we think cannot be sanctioned.

Being of the opinion that, under the terms of the policy, no forfeiture was effected, and that Mr. Mitchell died while insured under the policy, it is deemed unnecessary to decide the question of waiver, and therefore it is not passed upon by us.

For the reasons given, the judgment of the trial court is reversed and here rendered for appellant.

Reversed and rendered.